UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLOYD MAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-cv-7503 |
| ) | |
| SYLVIA MAHONE; HOLLY LOGAN; ) | Judge John W. Darrah |
| DR. IMHOTEP CARTER ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Floyd May filed a Complaint against Defendants Dr. Sylvia Mahone, Nurse Holly Logan, and Dr. Imhotep Carter, asserting various claims regarding the medical treatment Plaintiff received while incarcerated in Stateville Correctional Center.[1] Defendants moved for summary judgment on July 10, 2014. For the reasons set forth more fully below, Defendants' Motion for Summary Judgment [99] is granted.

### BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff Floyd May is an inmate at Stateville Correctional Center ("Stateville"), serving a twenty-five year sentence for armed robbery. (Dkt. 99-2, ¶ 1; Dkt. 107, ¶ 1.) Dr. Imhotep Carter was a physician at Stateville from July 2011 to May 2012. (Dkt. 99-2, ¶ 2; Dkt. 107, ¶ 2.) Dr. Sylvia Mahone was a physician at the Northern Reception and Classification Center (the "NRC"). (Dkt. 99-2, ¶ 3; Dkt. 107, ¶ 3.)

---

[1] Plaintiff identifies Logan as a Defendant but does not link her to any claims in his Complaint. Plaintiff has also recently filed a separate but related action against Logan in Case No. 14-cv-10103.

While incarcerated at Cook County Jail in May 2011, Plaintiff began feeling severe symptoms of pain, sweating, and difficulty eating. (Dkt. 99-2, ¶ 22; Dkt. 107, ¶ 22.) He also had lumps in his groin. (*Id.*) Plaintiff was diagnosed with stage 4 mantle cell non-Hodgkins lymphoma and given a life expectancy of three years. (Dkt. 99-2, ¶ 24; Dkt. 107, ¶ 24.) Plaintiff began a chemotherapy regimen at Stroger Hospital. (Dkt. 99-2, ¶ 26; Dkt. 107, ¶ 26.) The regimen consisted of a cycle where every twenty-one days, Plaintiff would be admitted to Stroger as an inpatient for three to five days of chemotherapy. (*Id.*) Plaintiff was scheduled for eight to twelve cycles. (*Id.*) Plaintiff was transferred to Stateville in September 2011 after four to six cycles of chemotherapy. (*Id.*)

At the time relevant to this action, Mahone was the medical director at the NRC. (Dkt. 99-2, ¶ 28; Dkt. 107, ¶ 28.) Inmates are first screened at the NRC when they are transferred to Stateville. (Dkt. 99-2, ¶ 30; Dkt. 107, ¶ 30.) Mahone screened Plaintiff on September 16, 2011. (*Id.*) Mahone documented Plaintiff's lymphoma and chemotherapy treatments and planned to admit him to the Stateville infirmary. (*Id.*) Mahone informed Plaintiff that the Illinois Department of Corrections sends inmates to the hospital at the University of Illinois at Chicago ("UIC") and not Stroger Hospital. (Dkt. 99-2, ¶ 32; Dkt. 107, ¶ 32.) Plaintiff's chemotherapy treatment was transferred to UIC. (Dkt. 99-2, ¶ 35; Dkt. 107, ¶ 35.) The treatment eliminated the cancer in Plaintiff's lymph nodes and suppressed the disease. (Dkt. 99-2, ¶ 41; Dkt. 107, ¶ 41.)

Dr. Pritesh Patel was Plaintiff's outpatient hematologist and primary oncologist at UIC. (Dkt. 99-2, ¶ 44; Dkt. 107, ¶ 44.) Patel placed Plaintiff on a maintenance dose of a drug called Rituximab. (Dkt. 99-2, ¶ 51; Dkt. 107, ¶ 51.) As of March 2012, Plaintiff is in remission. (Dkt. 99-2, ¶ 60; Dkt. 107, ¶ 60.)

## LEGAL STANDARD

*Summary Judgment Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original). "It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' . . . it is not required to scour the party's various submissions to piece together

appropriate arguments. A court need not make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986)).

*Local Rule 56.1*

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment." Local Rule 56.1(b)(3)(C) further permits the nonmovant to submit a statement "of any additional facts that require the denial of summary judgment . . . ." To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

District courts must liberally construe the pleadings of *pro se* litigants. H*udson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). This liberal construction requirement "give[s] a *pro se* plaintiff a break" when his or her pleadings fail on a technicality but are otherwise understandable. *Id.* However, *pro se* litigants "are not excused from compliance with

4

procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011). Indeed, district courts may "rigorously enforce" the requirements of Local Rule 56.1. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 853 (N.D. Ill. 2013).

If a responding party does not comply with Rule 56.,1 "additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey, Illinois*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817. Self-serving affidavits can be "a legitimate method of introducing facts on summary judgment" and can be sufficient to thwart a summary judgment motion. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459-60, 460 n.1 (7th Cir. 2014) (citing *Hill v. Tangherlini*, 724 F.3d 965, 967-68 & n. 1 (7th Cir. 2013)). However, the affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). "Personal knowledge can include reasonable inferences, but it does not include speculating as to [a defendant's] state of mind, or other intuitions, hunches, or rumors." *Widmar*, 772 F.3d at 460 (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

*Local Rule 56.2*

Local Rule 56.2 requires "[a]ny party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment' in the form indicated below." N.D. Ill. L.R. 56.2. The Notice "explains the nature of a summary

judgment motion and tells the *pro se* litigant what she must do to prevent summary judgment." *Id.* Defendants filed a Certificate of Service of Rule 56.2 Notice on January 27, 2014 and certified that they mailed discovery materials to Plaintiff on January 28, 2014. (Dkt. 75, 76.)

**ANALYSIS**

Plaintiff alleges several violations of his Eight Amendment rights. First, Plaintiff alleges that Mahone and Carter failed to acquire and administer cancer treatment drugs when Plaintiff arrived at Stateville or, alternatively, failed to send him back to the Cook County Department of Corrections for cancer treatment. Second, Plaintiff alleges that Defendants failed to acquire and administer his prescribed cancer medication in a timely and reasonable manner. Third, Plaintiff alleges that the Defendants failed to seek authorization for stem-cell treatments. Fourth, Plaintiff alleges that Defendants rejected and/or failed to accept medication from the treating hospital while failing to provide a reasonable and timely alternative. Fifth, Plaintiff alleges that Defendants failed to ensure that Plaintiff was sent to his hospital appointments on a timely basis. Sixth, Plaintiff alleges that Defendants failed to follow the instructions of his oncologist when he developed a fever. And last, Plaintiff alleges that his inadequate medical care was provided in retaliation for filing grievances and lawsuits.

As an alternative basis for several of these claims, Plaintiff argues that Defendants' actions also violated the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and constitute malpractice under Illinois state law. Plaintiff does not cite to specific portions of the Americans with Disabilities Act or the Rehabilitation Act that Defendants have violated or provide any support for such violations. Additionally, Plaintiff has not provided a medical report or an attorney affidavit indicating that he consulted with a healthcare professional about the case and that a reasonable and meritorious

6

claim exists, as required by the Illinois Healing Arts Malpractice Act. *See* 735 ILL. COMP. STAT. 5/2-622(a)(1). Failure to provide these materials is grounds for dismissal. 735 ILL. COMP. STAT. at 5/2-622(g). Moreover, as of March 2012, Plaintiff's cancer is in remission, (Dkt. 99-2, ¶ 60; Dkt. 107, ¶ 60), which would appear to negate any negligence claim. Regardless, Plaintiff has not demonstrated "the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care." *Purtill v. Hess*, 111 Ill.2d 229, 241-42 (1986). Plaintiff has failed to establish any factual issue regarding his medical malpractice claim. To the extent that Plaintiff's Complaint claims violations of the Americans with Disabilities Act, the Rehabilitation Act, and Illinois malpractice and negligence laws, Defendants' Motion for Summary Judgment is granted.

Therefore, only Plaintiff's Eighth Amendment claims must be addressed. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno*, 414 F.3d at 652-53 (quoting *Estelle*, 429 U.S. at 104). Plaintiff must satisfy two elements to prove a deliberate indifference claim: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). For the objective element, Plaintiff must show that he had an objectively serious medical need. *Id.* "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). For the subjective element, Plaintiff must show that Defendants "were aware of his serious medical need and were deliberately indifferent to it." *McGee*, 721 F.3d at 480. "Whether a medical condition is

7

'serious' and whether a defendant was 'deliberately indifferent' to it are fact questions, to be resolved by a jury if a plaintiff provides enough evidence to survive summary judgment." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir.2008)). There is no dispute that Plaintiff's medical condition is serious.

Deliberate indifference requires more than negligence or even malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir.2008). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, No. 14-1752, 2014 WL 5861515, at *5 (7th Cir. Nov. 13, 2014) (citing *Roe*, 631 F.3d at 857; *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." (Internal quotations omitted.) *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Further, even if a defendant recognizes a substantial risk, they are free from liability if they 'responded reasonably to the risk, even if the harm ultimately was not averted.' *Gayton*, 593 F.3d at 620 (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

*Medication Claims*

Plaintiff alleges that Mahone and Carter failed to acquire and administer cancer treatment drugs and that Defendants rejected and/or failed to accept medication from the treating hospital, while failing to provide a reasonable and timely alternative. Defendants repeatedly and inexplicably claim the Plaintiff lacked personal knowledge of whether or not he received his medication. (Dkt. 119; Dkt. 109, ¶¶ 63, 65, 69.) Defendants also argue that Mahone received and ordered the medication and cite to ¶ 38 in their Statement of Facts to support the argument.

8

However, ¶ 38 does not say anything about ordering medication, nor do Defendants' ever assert in their Statement of Facts anything about Mahone ordering medication.[2]

However, Plaintiff does not provide facts showing that failing to provide medication was anything more than an inadvertent failure to provide adequate medical care. An inadvertent failure to provide medical care does not rise to the level of deliberate indifference. *See Estelle*, 429 U.S. at 105-106. Patel did answer yes when asked if delay or lack of providing oral medications or injections could affect blood counts and potentially affect whether Plaintiff could receive chemotherapy. (Dkt. 99-7, p. 51:29-34). But Plaintiff's accusations that this was purposeful or deliberately indifferent are based on hearsay or purported information of which Plaintiff would not have personal knowledge.[3] Therefore, they cannot be considered as facts for summary judgment. *See Widmar*, 772 F.3d at 459-60. Plaintiff cites *Ralston v. McGovern*, 167 F.3d 1160 (7th Cir. 1999), for the proposition that interfering with a cancer patient's treatment is inherently "barbarous." However, in that case, a prison guard deliberately refused to give an inmate pain medication prescribed by the prison doctor for cancer treatment side effects. *Ralston*, 167 F.3d at 1162. Again, Plaintiff has not shown that any failure to provide medication was deliberate; therefore, *Ralston* is inapposite.

---

[2] Plaintiff correctly points out that Defendants make several assertions in the Memorandum of Law supporting the Motion for Summary Judgment which are not supported by their Statement of Facts. Those arguments will not be considered. Defendants also support arguments with inaccurate citations to their Statement of Facts. Those arguments will be considered, but Defendants are cautioned to be more careful in the future.

[3] As discussed above, Rule 56 requires that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). And personal knowledge cannot include speculation as to state of mind or other intuitions, hunches, or rumors. *Widmar*, 772 F.3d at 460 (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)). Plaintiff has submitted a forty-page affidavit that contains numerous violations of this rule. For example, Plaintiff repeatedly claims that Defendants were purposefully mistreating him, and hoping that he would die, because they were afraid that previous negligence would "come back to haunt them." This is speculation as to the Defendants' state of mind.

Plaintiff has not shown that there is a genuine factual dispute on Plaintiff's claim regarding deliberate indifference as to his medications.

*Hospital Appointments*

Plaintiff alleges that Defendants failed to ensure that he was transported to hospital appointments in a timely manner. Specifically, Plaintiff alleges that Mahone caused a one-day delay in his first chemotherapy appointment after he was transferred to Stateville. Again, Plaintiff has not provided facts showing that this delay was anything more than an inadvertent failure to provide adequate medical care, which does not rise to the level of deliberate indifference. *See Estelle*, 429 U.S. at 105-106. An unexplained delay may support a deliberate indifference claim if a physician is aware of the severity of a problem and refuses to authorize treatment. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Here, it is uncontested that Mahone did arrange for Plaintiff to receive his treatment, but this was achieved one day later than previously scheduled.

Plaintiff also alleges that Carter refused to send Plaintiff for his chemotherapy appointment on October 3, 2011. However, Plaintiff does not provide proper factual support for this statement. Plaintiff's Exhibit 2 shows Carter's signature on a page marked "Final Report," but this page does not contain any dates for future appointments. (Dkt. 82, Exh. 2.) Plaintiff's Exhibit 3 appears to be a medical record indicating that Plaintiff missed an appointment on October 3, 2011. (Dkt. 82, Exh. 3.) There is no indication that the appointment was for chemotherapy, and Plaintiff does admit that he went to his next chemotherapy appointment on October 17, 2011, and returned October 22, 2011. There is also nothing in those records to document that Carter prevented Plaintiff from attending the appointment. Plaintiff has not shown deliberate indifference on the part of the Defendants.

Plaintiff has not shown there is a genuine factual dispute on Plaintiff's claim regarding hospital appointments as acts of deliberate indifference.

*Fever*

Plaintiff alleges Defendants failed to follow the instructions of his oncologist when he developed a fever. Specifically, Plaintiff alleges that Defendants failed to rush him to the emergency room when he had a neutropenic fever in excess of 103 degrees on October 1, 2011. While Plaintiff states in his affidavit that Carter was aware the oncologist instructed the Plaintiff to be rushed to the emergency room if a fever occurred, there are no facts showing that Carter was aware of the fever until October 3, 2011. Plaintiff has not properly shown facts to rebut Carter's statement that the first time he encountered Plaintiff was on October 3, 2011, after the fever. (Dkt. 99-6, p. 13:18-25.) Plaintiff does not allege any facts linking this claim to Mahone.

Plaintiff also contends that Defendants were not experts in cancer or blood diseases and, therefore, cannot know what reasonable care for him is in this situation. However there is no single, proper way to practice medicine in a prison but "a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Plaintiff has not shown that the treatment he received in prison for his fever was not within the range of acceptable courses. Further, while it is undisputed that neither Carter nor Mahone are oncologists, Plaintiff cites to no authority for the proposition that treating doctors must be experts in particular diseases to determine reasonable care, in this case, for treating Plaintiff's fever.

Plaintiff has not shown that there is a genuine factual dispute on Plaintiff's claim that the Defendants' treatment of his fever constituted deliberate indifference.

*Stem Cell Transplant*

Plaintiff alleges that Defendants were aware of Patel's recommendation for a stem cell transplant and purposefully did not seek authorization. Patel's notes state, "we would continue to consider/recommend this treatment if permitted by prison authorities." (Dkt. 84, Exh. 1, p.3.) However, Patel himself indicated that he did not remember contacting Defendants about performing a stem-cell transplant procedure. (Dkt. 110, ¶ 54.) Mahone did not remember being contacted by Plaintiff's oncologists about a recommendation for stem cell transplantation. (Dkt. 99-2, ¶ 37.) Plaintiff disputes this; but his citations to the record do not support Plaintiff's assertions, as it mischaracterizes Mahone's testimony. Plaintiff's cited exhibits are either medical history prior to when Mahone was his treating physician or do not involve a stem cell transplant recommendation. Mahone stated that she knew about a referral for a bone marrow transplant evaluation, which she arranged. (Dkt. 99-5, p. 74:22-75:8.) It is undisputed that Carter never spoke with any of Plaintiff's physicians at UIC. (Dkt. 99-2, ¶ 70; Dkt. 107, ¶ 70.)

Even if Defendants were aware that Patel had recommended a stem cell transplant, Patel opined that oncologists would believe that maintenance therapy with Rituximab was reasonable. (Dkt. 110, ¶ 57). Plaintiff, however, contends that Patel determined maintenance therapy was reasonable only "in light of the fact that there was no other medical choice." (*Id.*). But Plaintiff's citation to the record does not support Plaintiff's contention. Patel did mention "constraints" but was referring to his own medical decision making and not whether the course of treatment chosen by Defendants was reasonable. (Dkt. 99-7, p. 23:13-16). "[P]rison doctors may exhibit deliberate indifference to a known condition through inaction, or by persisting with inappropriate treatment." (Internal citations omitted.) *Jones v. Cullinan*, No. 09-CV-03916, 2013 WL 1340405, at *4 (N.D. Ill. Mar. 31, 2013). But the maintenance treatment Plaintiff

received was within the range of appropriate treatment. "What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Plaintiff again argues that Defendants were not experts in cancer or blood diseases and, therefore, cannot know what reasonable care for him is in this situation. However, when all facts are considered, Patel, who is Plaintiff's oncologist and hematologist, indicated maintenance treatment with Rituximab was reasonable, not inappropriate. And Plaintiff has offered no medical testimony or other evidence to the contrary. Therefore, it cannot be said that Defendants' conduct was such a departure from accepted professional standards or practices that it called into question whether they were actually exercising professional judgment.

Plaintiff has not shown that there is a genuine factual dispute on Plaintiff's claim that the failure to provide a stem cell transplant constitutes deliberate indifference.

*Retaliation Claim*

Plaintiff also claims that adverse medical actions were taken against him in retaliation for his filing of grievances and lawsuits. However, his only support for this proposition comes from his own affidavit, and the supporting statements are speculation "as to [a defendant's] state of mind, or other intuitions, hunches, or rumors." *Widmar*, 772 F.3d at 460 (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)). Further, the support Plaintiff provides for his retaliation claim merely restates the allegations of his pleading, which is inadequate to defeat summary judgment. *See Anderson*, 477 U.S. at 248. Plaintiff has not shown that there is a genuine issue of material fact as to his retaliation claim. *See Id.*

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [99] is granted. Judgment is entered in Defendants' favor, and the civil case is closed.

Date:  February 11, 2015    /s/ JOHN W. DARRAH
JOHN W. DARRAH
United States District Court Judge